## Taxation of Coöperative Associations

FUSS, Deputy Attorney General, June 28, 1943. —
By your revised letter of March 18, 1943, this depart-
ment was requested to furnish you with an opinion
advising whether coöperative associations of all kinds
are liable: (1) For corporate net income tax under
the Corporate Net Income Tax Act of May 16, 1935,
P. L. 208, as reënacted and amended by the Acts of
April 8, 1937, P. L. 227, May 5, 1939, P. L. 64, and May
29, 1941, P. L. 62, 72 PS §3420a et seq.; (2) for
capital stock tax under the Act of June 1, 1889, P. L.
420, sec. 21, as amended, 72 PS §1871; and (3) for
net earnings tax under the Act of June 1, 1889, P. L.
420, sec. 27, as amended by the Act of April 25, 1929,
P. L. 668, 72 PS §2241.

The comprehensive nature of your request involves
consideration of the foregoing legislation with respect

to both incorporated and unincorporated coöperative associations.

Preliminarily it should be noted, as even a cursory examination reveals, that the foregoing tax statutes cover only corporations, joint-stock associations, and limited partnerships. Unincorporated coöperative associations do not come within the provisions thereof and hence are not taxable thereunder. The taxability, however, of coöperative associations incorporated under special acts of assembly depends not only upon the construction of the tax statutes involved but also upon the provisions of the various incorporating acts. It is with the taxability of these specially incorporated coöperative associations that we are here chiefly concerned.

In this Commonwealth the Act of April 30, 1929, P. L. 885, 14 PS §81 et seq., provides for the incorporation and regulation of coöperative agricultural associations having capital stock and for the acceptance of its provisions by existing corporations having like purposes.

Section 20 of the Act of April 30, 1929, supra, 14 PS §100, provides:

"No association organized under the provisions of this act shall be liable for the payment of any State tax upon its capital stock, or upon any scrip, bonds, certificates, or other evidences of indebtedness issued by such corporation, and all stocks, bonds, et cetera, issued by such associations shall be exempt from all State taxation; and such associations shall not be required to file with the Auditor General of this Commonwealth the reports relative to such taxes as are or may be by law required of corporations not exempt from the payment of such taxes."

Under section 21 existing corporations accepting the provisions of this act are entitled to the same privileges and immunities as those organized under it. This act

grants these associations no express exemptions from liability for the payment of taxes other than capital stock and loans taxes.

The Corporate Net Income Tax Act of May 16, 1935, P. L. 208, sec. 3, as finally reënacted and amended by the Act of May 29, 1941, P. L. 62, imposes upon "every corporation" for the privilege of doing business in the Commonwealth, or having capital or property employed or used in the Commonwealth, "a State excise tax at the rate of . . . per centum per annum upon each dollar of net income of such corporation received by, and accruing to, such corporation"; and section 2 of the said act, entitled "Definitions", defines "corporation" as follows:

" 'Corporation.' A corporation having capital stock, joint-stock association, or limited partnership either organized under the laws of this Commonwealth, the United States, or any other state, territory, or foreign country, or dependency, and doing business in this Commonwealth, or having capital or property employed or used in this Commonwealth by or in the name of itself, or any person, partnership, association, limited partnership, joint - stock association, or corporation. The word 'corporation' shall not include building and loan associations, banks, bank and trust companies, national banks, savings institutions, trust companies, title insurance companies, beneficial life and limited life insurance companies, mutual fire, mutual casualty and mutual life insurance companies, and foreign stock companies registered in this Commonwealth and therein engaged in doing business as life, fire and casualty insurance companies, and surety companies."

It is clear from the plain meaning of the words that incorporated coöperative agricultural associations, having capital stock, fall within the definition of the

word "corporation," which expressly includes "a corporation having capital stock." It is equally apparent that they are not numbered among those types of organizations that are expressly excluded from the definition by enumeration. To construe the definition so as to exclude incorporated coöperative agricultural associations would involve a construction contrary to the plain wording of the statute.

Section 2 of the said act also defines "net income" as follows:

" 'Net Income.' 1. In case the entire business of the corporation is transacted within this Commonwealth, net income for the calendar year or fiscal year as returned to, and ascertained by the Federal Government, subject, however, to any correction thereof, for fraud, evasion, or error as finally ascertained by the Federal Government: Provided, That additional deductions shall be allowed from net income on account of any Federal taxes paid during such calendar or fiscal year for the preceding calendar or fiscal year, or accrued during such calendar or fiscal year for such year, as the case may be, and on account of any dividends received from any other corporation . . ."

Section 101 of the Federal Internal Revenue Code of February 10, 1939, 53 Stat. at L. 1, as amended in other respects October 21, 1942, 26 U.S.C. §101, expressly provides for the exemption from taxation of various organizations, among which are coöperative agricultural associations under certain conditions, to wit:

"(12) Farmers', fruit growers', or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchas-

ing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 per centum per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association; nor shall exemption be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose. Such an association may market the products on nonmembers in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases. Business done for the United States or any of its agencies shall be disregarded in determining the right to exemption under this paragraph . . ."

Exemption from Federal taxation under section 101 of the Federal Internal Revenue Code [1] does not pre-

---

[1] Under Regulation 103, sec. 19.101-1, every organization claiming exemption must file with the collector proof of exemption.

clude taxation by this Commonwealth' under the Corporate Net Income Tax Act, on the ground that section 2 thereof defines "net income" as "net income for the calendar year or fiscal year *as returned to, and ascertained by* the Federal Government". (Italics supplied.) The base upon which the tax is measured is something separate and distinct from the tax itself. The only purpose of the reference to the income returned to and ascertained by the Federal Government, contained in the State act, was to afford the Commonwealth a fixed base for the measuring of the tax imposed by its own act. That this was its only function was recognized in Commonwealth v. Warner Bros. Theatres, Inc., 345 Pa. 270, 271, 272 (1942), wherein the Supreme Court said:

"At the outset, it is to be observed that we are not considering an income tax, but an excise tax for the privilege of doing business in the Commonwealth,[2] based upon net income as returned to and ascertained by the Federal Government . . . Net income as ascertained is the base upon which the tax is measured, not the tax itself. How it was fixed by the Federal authorities is of no concern to the taxing officers of the Commonwealth nor to its statute. The rate of the income tax may vary, or the method of its computation, but as a base, it is unvarying."

Furthermore, it is now well settled that the definition of "net income", as contained in section 2, constitutes only a part of, and not the whole definition of the term: National Transit Co. et al. v. Boardman, etc., 328 Pa. 450 (1938). In that case the Secretary of Revenue had refused to permit plaintiff corporations to file a consolidated return. A peremptory writ of mandamus was awarded against him. On appeal the secretary con-

---

[2] "or having capital or property employed or used in this Commonwealth," under the reënacting and amending Corporate Net Income Tax Act of May 5, 1939, P. L. 64, and the Act of May 29, 1941, P. L. 62.

tended that, since the "base of the tax to which the rate is to be applied is the net income as returned to and ascertained by the Federal Government", only such corporations as are permitted by Congress to file consolidated returns may do so under the State statute. The Supreme Court said (pp. 454, 455):

"This contention he derives, as we understand his argument, from part of the definition of 'net income' contained in section 2. . . . But a reading of the act shows that the word income has a wider meaning than that attributed by the Secretary. Section 2 provides that the definition of income is not limited to what has already been quoted, if the text of the act indicates a different meaning. From section 4 of the act, we take the following: '. . . it shall be the duty of every corporation, liable to pay tax under this act . . . to transmit to the department, upon a form prescribed, prepared, and furnished by the department, a report under oath or affirmation . . . of net income taxable under the provisions of this act. Such report shall set forth: (a) A true copy of its return to the Federal Government of the annual net income arising or accruing in the calendar or fiscal year next preceding, or such part or portions of said return, as the department may designate. (b) *If no return was filed with the Federal Government, the report made to the department shall show such information as would have been contained in a return to the Federal Government, had one been made,* and (c) Such other information as the department may require.'

"The requirement of a copy of the report made to the Federal Government was doubtless for the information of the Secretary in performing his duties: compare *Com.* v. *Chambersburg Engineering Co.*, 287 Pa. 54, 134 A. 408." (Italics supplied.)

The Supreme Court held that the right to file consolidated reports was determined under section 5 of the

Corporate Net Income Tax Act, irrespective of Federal legislation: Revenue Act of June 22, 1936, c. 690, sec. 141, 49 Stat. at L. 1698, amending the Act of May 10, 1934, c. 277, sec. 141, 48 Stat. at L. 720, 26 U. S. C. §141. So, in this case, the question of liability under the Corporate Net Income Tax Act is determined by the provisions of the act itself, even though the base upon which such liability is measured is fixed by a determination made by the Federal Government.

The so-called Net Earnings Tax Act of June 1, 1889, P. L. 420, sec. 27, as amended by the Act of April 25, 1929, P. L. 668, sec. 1, 72 PS §2241, imposes a tax of three percent upon the annual net earnings or income of "every incorporated company or limited partnership whatever, whether the same be incorporated, formed or organized under the laws of this or any other State or Territory, and doing business within this Commonwealth, and liable to taxation therein", which is not subject to capital stock (or gross premium) taxes. As pointed out earlier in this opinion, sections 20 and 21 of the Act of April 30, 1929, supra, expressly exempt coöperative agricultural associations having capital stock and incorporated thereunder, or accepting the provisions thereof, from liability for the payment of capital stock and loans taxes.[3] It makes no mention of other exemptions. In view of the provisions of that act, and further, in the absence of any express exemption in the Net Earnings Tax Act itself, accruing to the benefit of this particular type of organization, there is no apparent reason for engrafting such exemptions upon the said act. These associations are required, therefore, in accordance with the said act, to make an

---

[3] The exemption granted by this Act of 1929 was not repealed by implication through the amendments of May 16, 1935, P. L. 184, and April 8, 1937, P. L. 239, to the Capital Stock Tax Act of June 1, 1889, P. L. 420, sec. 21, as amended, 72 PS §1871. See article VI, sec. 83, of the Statutory Construction Act of May 28, 1937, P. L. 1019.

annual report to the Department of Revenue, setting forth the entire amount of net earnings or income, if any, received during the preceding year, and such other information as the department may require, and pay the amount of tax due, if any, upon such net earnings or income.

Liability under the Net Earnings Tax Act does not avoid for these associations additional liability under the Corporate Net Income Tax Act of 1935, as re-enacted and amended, supra. The latter act, in section 3, specifically provides that the tax thereby imposed "shall be in addition to all taxes now imposed on any corporation under the provisions of existing law".

Coöperative agricultural credit associations having capital stock are incorporated and regulated under the Act of May 25, 1933, P. L. 1027, 14 PS §114 et seq. Section 15 of this act carries the identical wording of section 20 of the Act of 1929, supra. The former section exempts credit associations from the payment of capital stock and loans tax in the same manner as the latter section exempts coöperative agricultural associations having capital stock from the payment of such taxes. Similarly, all that has been said with reference to the applicability of the Corporate Net Income Tax and Net Earnings Tax Act to coöperative agricultural associations having capital stock applies with equal effect to coöperative agricultural credit associations.

Coöperative agricultural associations incorporated under the Act of June 12, 1919, P. L. 466, sec. 1, as amended by the Act of May 1, 1929, P. L. 1201, sec. 1, 14 PS §41 et seq. having no capital stock and not conducted for profit are clearly not within the meaning of the word "corporation" as defined by the Corporate Net Income Tax Act, supra. Hence, these associations are free from liability for payment of said tax. Furthermore, they are expressly exempted from the Capital Stock Tax Act of June 1, 1889, P. L. 420, sec. 21,

as amended, 72 PS §1871. However, not having been expressly exempted from the Net Earnings Tax Act, but rather included therein by reference, they are, like coöperative agricultural associations incorporated under the Act of April 30, 1929, supra, required to make an annual report to the Department of Revenue, despite the fact that they have presumably no taxable net earnings.[4]

Coöperative associations, productive and distributive, incorporated under the Act of June 7, 1887, P. L. 365, sec. 1, 14 PS §1 et seq., or availing themselves of the provisions of the said act, have capital stock and clearly fall within the meaning of the word "corporation" as defined by the Corporate Net Income Tax Act, supra. Hence these associations are liable for the payment of the said tax. These associations, unlike coöperative agricultural associations incorporated under the Act of April 30, 1929, are not expressly exempted by their incorporating act from capital stock taxes; hence they come within the Capital Stock Tax Act, supra, but correspondingly are not subject to the complementary Net Earnings Tax Act, supra.

Coöperative associations incorporated as credit unions under the Act of May 26, 1933, P. L. 1076, as amended by the Act of May 18, 1937, P. L. 713, 14 PS §201 et seq., are, under section 23 of said act, not subject to taxation except as to real estate owned by them.

Nonprofit coöperative associations incorporated under the Electric Coöperative Corporation Act of June 21, 1937, P. L. 1969, 14 PS §251 et seq., or availing themselves of the provisions of the said act, are, under section 31, required to pay a license fee but are exempt from all other State taxes of whatever kind or nature.

Generally, all incorporated coöperative associations, other than those specially incorporated and subject to

---

[4] This requirement is similar to the proof of exemption required by the Federal taxing authorities (see footnote 1).

or free from taxation as discussed above, come within the provisions of the Corporate Net Income Tax Act, supra, and the Capital Stock Tax Act, supra.

The taxability of all incorporated coöperative associations of whatever kind is thus determined with a view to accomplishing a twofold objective—first, to foster the lawful endeavors of true coöperative associations, and secondly, to protect competitive business corporations from the consequences of granting unqualified immunities from taxation to incorporated associations operating beyond the scope of true coöperative activities.

We are of the opinion, therefore, and you are accordingly advised:

1. Unincorporated coöperative associations are not subject to the payment of taxes imposed by the Corporate Net Income Tax Act, the Capital Stock Tax Act, or the Net Earnings Tax Act.

2. Coöperative agricultural associations incorporated under the Act of April 30, 1929, having capital stock, are subject to the payment of taxes imposed by the Corporate Net Income Tax and Net Earnings Tax Act.

3. Coöperative agricultural credit associations incorporated under the Act of May 25, 1933, having capital stock, are subject to the payment of taxes imposed by the Corporate Net Income Tax and Net Earnings Tax Act.

4. Coöperative agricultural associations incorporated under the Act of June 12, 1919, as amended, not having capital stock and not conducted for profit, are subject to the payment of taxes imposed by the Net Earnings Tax Act only if net earnings should result.

5. Productive and distributive coöperative associations incorporated under the Act of June 7, 1887, are subject to the payment of taxes imposed by the Corporate Net Income Tax Act and by the Capital Stock Tax Act.

6. Credit unions incorporated under the Act of May 26, 1933, as amended, are not subject to the payment of taxes imposed by the Corporate Net Income Tax Act, Capital Stock Tax Act, or the Net Earnings Tax Act.

7. Electrical coöperative associations incorporated under the Act of June 21, 1937, are not subject to the payment of taxes imposed by the Corporate Net Income Tax Act, the Capital Stock Tax Act, or the Net Earnings Tax Act.

8. Generally, all other incorporated coöperative associations are subject to the payment of taxes imposed by the Corporate Net Income Tax Act and the Capital Stock Tax Act.